**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| TIMOTHY KRAUSE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-102-TS |
| | ) | |
| JOHN VANNATTA, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Pro se petitioner, Timothy Krause, an inmate at the Miami Correctional Facility in Michigan City, Indiana, lost a total of 218 days good time credit after he refused to submit urine samples for two separate drug tests. After exhausting his administrative remedies, Krause filed a petition seeking relief under 28 U.S.C. § 2254. The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana submitted the administrative record including documents designated A through Y, which set out the underlying procedures in this conduct adjustment board ("CAB") proceeding. The Petitioner did not filed a traverse.

The Petitioner claims that the State violated his constitutional rights in two ways: 1) that the manner in which the urinalysis was conducted violated his due process and equal protection rights; and 2) that the sanction he received was cruel and unusual.

**RELEVANT FACTS**

The State has issued guidelines for conducting urinalysis that require the person taking the test to drink eight ounces of water and provide a urine specimen within two hours thereafter.

(Exhibit B.) On May 21, 2003, Sergeant Truax gave the Petitioner an eight ounce cup of water and explained that Krause had two hours to submit a urine sample, and that if he did not produce a sample a conduct report would be issued for refusing to submit to the test. The Petitioner stated to Sergeant Traux that he has an enlarged bladder that prevented him from urinating frequently, but that the condition was not listed in his medical packet. (Exhibit A.) The Petitioner drank the glass of water but did not submit a urine sample within two hours. (Exhibit A.)

Sergeant Truax wrote a conduct report on May 21, 2003, charging the Petitioner with refusal to submit. The Petitioner was notified of the disciplinary hearing on May 22, 2003. The Petitioner did not requested any witnesses or evidence. (Exhibit C.)

On June 28, 2003, the Petitioner was again asked to submit a urine sample, was given an eight ounce cup of water and explained that he had two hours to submit a urine sample, and that if he did not produce a sample, a conduct report would be issued. He did not provide a urine sample. Sergeant Lingley wrote a conduct report charging him with refusal to submit. (Exhibit L.) The Petitioner was notified of the charge on July 1, 2003. (Exhibit N.)  The Petitioner requested physical evidence in the form of "psy. records." (Exhibit N.)

The CAB hearings for both conduct reports were held on July 14, 2003.  The medical evidence submitted to the CAB, from the Petitioner's physician, indicated that "[d]uring voiding the urethra is well seen and there is no evidence of abnormalities." The medical documents also noted that the Petitioner had very little discomfort during filling of the urinary bladder and only experienced a full sensation when the bladder contained between 500 and 600 ccs of liquid. The CAB found that "Medical documentation says 'no abnormalities in voiding ureter.'" and found the Petitioner guilty of both charges. (Exhibits I & R.) The Petitioner's finding of guilt was based on

2

the conduct reports, staff reports, evidence from witnesses, medical records, and the Petitioner's own statement. (Exhibits I & R.) The Petitioner lost 90 days earned credit time for the first violation and 128 days earned credit time for the second violation. (Exhibits I & R.) The Petitioner appealed to the Facility Head and Final Reviewing Authority without success.

## STANDARD OF REVIEW

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision. Due process requires that the Petitioner be given: (1) advance written notice of the charges against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073 (7th Cir. 1994) (citing *Wolff*, 418 U.S. at 563–67)).

For the hearing to be meaningful, the prisoner should also be afforded an opportunity to be heard before an impartial decision maker. *Id*. The decision must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445 (1985). The "some evidence" standard applies in this circuit, as reflected in *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717 (7th Cir. 1996). This is a lenient standard, requiring no more than "a modicum of evidence." *Webb*, 224 F.3d at 652. Even meager evidence is sufficient to support the revocation of good-time credits,

so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (citing *Hill*, 472 U.S. at 457). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (citing *Hill*, 472 U.S. at 455–56).

## DISCUSSION

The Petitioner raises two constitutional challenges to his CAB proceedings and sanctions. He claims: 1) that the manner in which the urinalysis was conducted violated his due process and equal protection rights under the Constitution; and 2) that the sanction he received was cruel and unusual in violation of the Eighth Amendment. The Court will address each of these concerns in the order that the Petitioner raised them.

### A. Urinalysis Testing Procedures

The Petitioner principally challenges the manner in which the urinalysis testing was conducted. In particular, he claims that he "was refused alternate options to submit a drug screen test." (Petition at 3.) He says he could not urinate on demand due to his enlarged bladder. The Petitioner submits a letter from a doctor which states that when the Petitioner was fourteen years old he had a high capacity bladder which may be a problem for him with urination on demand. The letter is dated August 27, 2003, and was not available to the CAB when it made its findings. (*See* Petition, Ex. 5.)

The Petitioner alleges that his due process rights were violated when the information regarding his medical condition was rejected and alternatives that were available were not utilized.

4

He does not contend that he was not given written notice of the charges against him at least twenty-four hours before the hearing, denied an opportunity to call witnesses and present documentary evidence in his defense, or that the CAB failed to provide a written statement of the evidence relied on and the reasons for the disciplinary action. *See Wolff*, 418 U.S. at 563–67; *Henderson* 13 F.3d at 1077. In fact, the Petitioner was given the opportunity to present his medical condition to the CAB. The Petitioner's challenge appears to be that the CAB should not have rejected his evidence and, in essence, did not have sufficient evidence to find him guilty.

The Petitioner did not have a documented medical problem before the test was administered. (Exhibit X.) The medical evidence submitted to the CAB, from the Petitioner's physician, indicates that "[d]uring voiding the urethra is well seen and there is no evidence of abnormalities" and noted that the Petitioner only experienced a full sensation when his bladder contained between 500 and 600 ccs of liquid. That the Petitioner may not have experienced a full sensation is not the same as saying that it was physically impossible for him to produce the sample. There was some evidence in the record to support the CAB's conclusion that the Petitioner did not have a medical problem that prohibited him from providing a sample within the allotted time and that he was guilty of refusing to submit to the urine test. The CAB's determination was not "arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Consequently, the Petitioner's claim that his finding was based on insufficient evidence is denied.

The Petitioner also attacks the testing procedure because it did not allow for alternatives. The procedures used by the State of Indiana allow a person being tested to have an eight ounce glass of water and be given two hours to produce a sample. (Exhibit B.) The Petition has pointed to nothing unconstitutional about the testing procedures in this case or the prison's application of those

5

procedures.

The Petitioner also fails to establish that his equal protection claim is plausible because he does not allege, or provide evidence, that he was intentionally discriminated against because of his membership in a protected class. *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982) (gravamen of equal protection lies in the invidious classification of persons aggrieved by the state's action).

**B. Cruel and Unusual Sentence**

The Petitioner alleges that cruel and unusual punishment was inflicted upon him when he was deprived 218 days earned credit time. He argues that DOC policies allow for alternate means of urine testing, but because none of the alternatives were used, the sentence is cruel punishment. (Petition at 4.) Aside from the fact that this claim is procedurally defaulted because the Petitioner failed to raise this claim on appeal to the Facility Head, it is without merit. The sentences were allowable according to the Disciplinary Code for Adult Offenders guidelines and do not constitute cruel and unusual punishment. (Exhibit W.)

**CONCLUSION**

For all the reasons stated, and because none of the Petitioner's constitutional rights have been violated, this Petition for relief under 28 U.S.C. § 2254 is DENIED.

SO ORDERED on August 4, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT